UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DORIS ARACELY LEMUS LOPEZ,
A-249-082-724,

              Petitioner,

    v.

WARDEN CALIFORNIA CITY
DETENTION FACILITY,

              Respondent.

No.  1:26-cv-2773-DC-DMC-HC

FINDINGS AND REOMMENDATIONS

Petitioner, an immigration detainee proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  See ECF No. 1.  Pending before the Court is Petitioner's request for ruling on petition, ECF No. 17. Respondent previously filed a response to the petition, ECF No. 12, and a supplemental response, ECF No. 15. Petitioner filed a traverse/reply, ECF No. 16.

**I. BACKGROUND**

Petitioner contends she is a citizen of Honduras who was issued a work permit and was living in the United States when she was detained by Immigrations and Customs Enforcement (ICE). See ECF No. 1, pg. 2.  According to Petitioner, she is a single mother and he

1

"children are suffering without [Petitioner's] care and presence." Id. Petitioner argues her detention violates her due process rights because Petitioner was living for over two years in the United States, released on an order of supervision on October 29, 2023, and enrolled in an Alternatives to Detention Program. See ECF No. 16, pg. 5. Petitioner asserts that she therefore has a liberty interest in her continued release, which "was strengthened when Respondents permitted her to remain and work in the community with her two minor children for more than two years." Id. According to Petitioner, her re-detention, absent a pre-deprivation hearing, violated due process. See id. at 6.  Petitioner asserts that the Matthews factors weigh in favor of granting the petitioner because the risk of erroneous deprivation is high and the government's interest is low. See id. at 8. Thus, Petitioner requests immediate release on the same conditions she was released prior to her detention on January 29, 2026. See id.

Initially, Respondent filed an answer to the petition arguing Petitioner is subject to a reinstated final order of removal and Petitioner is therefore "properly detained pursuant to 8 U.S.C. § 1231(a)." ECF No. 12, pg. 2. However, Respondent subsequently filed a supplemental response informing the Corut that Petitioner's order of removal was stayed by the Ninth Circuit, pursuant to an appeal, and Petitioner's detention is now pursuant to 8 U.S.C. § 1225(b)(2). See ECF No. 15, pg. 2. Respondent contends that Petitioner is an applicant for admission and therefore "subject to mandatory detention and thus ineligible for a bond hearing." Id. at 3.

## II. DISCUSSION

In light of the change in circumstances, the undersigned disregards Respondent's prior arguments in ECF No. 12 as they are no longer applicable given Petitioner is no longer subject to an order of removal. Accordingly, the undersigned finds that Petitioner has a protectable liberty interest in remaining out of custody, and she was deprived of this liberty without due process when re-detained without notice or a hearing.  Thus, the undersigned will recommend granting Petitioner's petition for writ of habeas corpus because her detention violates due process and recommend that Petitioner be immediately released from Respondents' custody under the same conditions she was released previously.

2

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. Hernandez v. Session, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings. Id. at 693–94. Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). The Court considers each step in turn.

A.    **Liberty Interest**

As for the first step, the Court finds Petitioner has shown she has a protectable liberty interest. See Morrissey, 408 U.S. at 482. "Freedom from imprisonment—from government custody, detention, or other forms of physical restrain—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025). "Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release].'" Id. (quoting Morrissey, 408 U.S. at 482) (modifications in original). "Accordingly, a noncitizen release from custody pending immigration proceedings has a protected liberty interest in remaining out of custody." Salcedo Aceros v. Kaiser, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional

3

release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." R.D.T.M. v. Wofford, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Respondents contend that Petitioner is detained under 8 U.S.C. § 1225(b)(2)(A) but there is no evidence in the record that an immigration officer made the requisite determinations for § 1225(b)(2)(A) to apply – that Petitioner is seeking admission and not clearly and beyond a doubt entitled to be admitted. Following and adopting the reasoning of other courts, this Court finds Petitioner is not actively seeking lawful entry because she already entered the United States over two years ago. See Salcedo Aceros, 2025 WL 2637503, at *8 (collecting cases concluding that § 1225 applies only to noncitizens "seeking admission," a category that does not include noncitizens like Petitioner, living in the interior of the country).

Respondents' proposed interpretation of the statute disregards the relationship between §§ 1225 and 1226 and would render the recent amendment to § 1226(c) superfluous. Lepe v. Andrews, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025). Specifically, and as many courts have discussed in length, if every "applicant for admission" is subject to mandatory detention under § 1225, there would have been no need for § 1226(c)(1)(E), which mandates detention for every noncitizen who is "present in the United States without being admitted or paroled" and who has been "charged with, arrested for, or admits to" committing certain crimes. 8 U.S.C. § 1226(c)(1)(E); Maldonado v. Olson, No. 25-CV-3142 (SRN/SGE), 2025 WL 2374411, at *12 (D. Minn. Aug 19, 2025) ("The Court will not find that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2).").

Indeed, prior to a July 2025 memorandum changing its' policy, the government consistently applied Section 1226(a), not Section 1225(b)(2), to noncitizens residing in the United States who were detained by immigration authorities and subject to removal. See Rodriguez Diaz, 53 F.4th at 1196. This Court agrees with and joins the majority of courts nationwide, including the Eastern District of California, in rejecting Respondents' interpretation of Sections 1225 and

4

1226. See Rodriguez Vazquez v. Bostock, 2025 WL 2782499, at *1, 21-22 (W.D. Wash. Sept. 30, 2025) (concluding, after a thorough analysis, that "the government's [interpretation of § 1225] belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice"); J.Y.L.C. v. Bostock, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025) (collecting more than thirty cases rejecting the government's assertion that § 1225 empowers the DHS to arrest and hold a noncitizen present without legal status who has spent years in the U.S.); Cardona-Lozano v. Noem, 2025 WL 3218244, at *6 (W.D. Tex. Nov. 14, 2025) ("Repeatedly, [district courts across the country] have found that DHS and the [Board of Immigration Appeals'] construction of the INA is incorrect and that petitioners who have long resided in the United States but are being held under § 1225 are entitled to relief.") (collecting cases); Faizyan v. Casey, 2025 WL 3208844, at *5 (S.D. Cal. Nov. 17, 2025) (holding that § 1226 applies to a petitioner who "DHS has consistently treated" as subject to discretionary detention and "who has been residing in the United States for two years" (internal quotation marks and citation omitted)); Josue I.C.A. v. Lyons, 2025 WL 3496432, at *3 n.6 (E.D. Cal. Dec. 5, 2025) (collecting cases); Morales-Flores v. Lyons, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (collecting cases) ("Courts nationwide, including this one, have overwhelmingly rejected respondents' arguments and found DHS's new policy unlawful.").

For these reasons, this Court rejects the government's contention that Petitioner is an "applicant for admission" subject to § 1225(b)(2) and finds that Petitioner is detained under 8 U.S.C. § 1226(a) and its implementing regulations because Petitioner has resided in this country for over two years since Petitioner was released into the United States on parole and afforced work authorization, until Petitioner was arrested and detained on January 29, 2026. Petitioner's re-detention on January 29, 2026, was not upon Petitioner's arrival to the United States.

As to whether there exists a protected liberty interest, the Court finds Petitioner was released from immigration detention, which created a reasonable expectation that she would be entitled to retain her liberty absent a material change in circumstances. Petitioner was initially released on his own recognizance and issued work authorization. This sets a clear and reasonable expectation that Petitioner would be entitled to retain his liberty absent a material change in

circumstances. Respondents do not allege Petitioner's conditional parole was revoked for any reason and instead argue Petitioner is subject to § 1225(b)(2). Thus, by Respondents' own concession, Petitioner's conditional release was not revoked to a due to a change in circumstances.

Petitioner's detention goes against United States Supreme Court precedent which recognizes that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued release. See Morrissey, 408 U.S. 471 at 482. Given this, the Court finds Petitioner has established her liberty interest in her continued release.

**B.     Process Due**

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. To determine such, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews v. Eldridge, 424 U.S. 319, 335 (1976). As set forth below, the Court finds Petitioner has established his due process rights were violated.

First, Petitioner has a substantial private interest in remaining free from detention. As discussed above, Petitioner has lived in the United States for over two years and has children living in the Untied States. Petitioner received work authorization and has no criminal record. Despite that, Petitioner has now been detained for over five months without any evidence of being afforded a bond hearing. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. See Manzanarez v. Bondi, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly); see also Colina-Meira v. Lyons, No. 1:25-cv-1716 CSK P, 2025 LX 673205 (E.D. Cal. Dec. 31, 2025).

Second, the risk of erroneous deprivation is considerable given Petitioner has not

6

received any bond or custody redetermination hearing. "[T]he risk of erroneous deprivation is high when, as here, parole is revoked without written notice or reason." Chavarria, 2025 WL 3533606, at *3; see also A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing."). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).

Thus, Court finds there is a serious likelihood Petitioner will be erroneously deprived of her liberty interest. Moreover, without any procedural safeguards to determine whether her re-detention was justifiable, the probative value of additional procedural safeguards is high. R.D.T.M., 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. See Garcia v. Andrews, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). This Court finds the government has an interest in enforcing immigration laws but Respondents' interest in detaining Petitioner without notice or a hearing here is low. See Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025). Detention hearings in immigration courts are routine and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094. Even if Respondents believed they had a proper reason to detain Petitioner, such decision on their part would warrant written notice and a pre-detention hearing rather than automatic detention. See E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process").

On balance, the Court finds the Matthews factors weigh in favor of finding Petitioner is entitled to notice and a bond hearing, and Petitioner should have been provided such notice and a hearing before she was re-detained. The Due Process Clause requires that, at a minimum, "that a deprivation of life, liberty, or property be preceded by notice and opportunity

7

for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted). In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a pre-deprivation hearing before their parole can be revoked. Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention." F.M.V., 2025 WL 3083934 at *6 (collecting cases). Respondents identify no reason why written notice was not provided or why a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025).

Thus, the undersigned finds Petitioner is entitled to relief as to her due process claim and will recommend granting Petitioner's petition for writ of habeas corpus.

## III. CONCLUSION

Based on the foregoing, the undersigned recommends:

1. It is RECOMMENDED that Petitioner's petition for writ of habeas corpus, ECF No. 1, be GRANTED as Petitioner's detention violates due process;

2. It is RECOMMENDED that Petitioner DORIS ARACELY LEMUS LOPEZ,  A-249-082-724 be RELEASED IMMEDIATELY from Respondents' custody upon the same conditions as her prior release, with her belongings. Respondents shall not impose any additional restriction on her, such as electronic monitoring, unless that is determined to be necessary at a future pre-deprivation/custody hearing;

3. It is RECOMMENDED that Respondents be ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven (7) day notice and a hearing before a neutral fact-finder where Respondents show: (a) there are material changed circumstances which demonstrate that there is a significant likelihood of

8

Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have counsel present.

4.     It is RECOMMENDED that Petitioner's request for ruling, ECF No. 17, be DENIED AS MOOT.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  Thus, within 7 days after being served with these findings and recommendations, any party may file written objections with the Court.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  June 15, 2026

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

9